UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMIL ABDUL SHABAZZ, | ) | Case No. 1:10CV1598 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE PATRICIA GAUGHAN |
| | ) | (Magistrate Judge McHargh) |
| ROBERT WELCH, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Jamil Abdul Shabazz[1] ("Shabazz") filed a petition pro se for a writ of habeas corpus arising out of his 2007 conviction for murder, in the Cuyahoga County (Ohio) Court of Common Pleas. (Doc. 1.) In his petition, Shabazz raises four grounds for relief, verbatim:

> 1. Ineffective assistance of Appellant Counsel when he failed to raise the issue that trial court deprived Petitioner Shabazz of his Sixth Amendment right to effective assistance of trial counsel when it failed

---

[1] Petitioner's name as listed on the petition is "Jamil Abdul Shabazz." The petitioner was formerly known as "Garrett Brandon," and his current name has also appeared as "Jamill Shabazz Abdul" or "Jamil Shabazz Abdul." See, e.g., State v. Abdul, No. 90789, 2009 WL 147403, at *1 n.1 (Ohio Ct. App. Jan. 22, 2009).

to make an adequate and timely inquiry into Petitioner Shabazz complaints of trial counsel.

2.  Petitioner was not afforded effective assistance of counsel when trial counsel failed to inquire concerning prospective jurors bias towards members of the muslim faith.

3.  The trial court error in denying Petitioners motion for Acquittal where the evidence is not sufficient to support conviction.

4.  Appellant counsel was ineffective for his failure to pursue trial counsels "Deficient Performance" in which key evidence was withheld from Petitioner Shabazz during pre-trials and trial, and for not subpoenaing key witnesses for the Petitioner which would of change the outcome of the case, violated Petitioner Shabazz Sixth and Fourteenth amendment right to effective assistance to counsel, and a right to a fair trial without any bias or prejudice.

(Doc. 1.)  The respondent has filed a motion to dismiss the petition.  (Doc. 6.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

> On April 26, 2007, a Cuyahoga County Grand Jury indicted Shabazz Abdul on one count of aggravated murder.  The indictment included a three-year firearm specification, notice of prior conviction, and repeat violent offender specification.
>
> On November 13, 2007, Shabazz Abdul executed a jury waiver as to the notice of prior conviction and repeat violent offender specification.  On that same date, a jury trial commenced on the remaining charge of aggravated murder with a three-year firearm specification attached.
>
> Jury Trial
> At trial, the evidence established that Shabazz Abdul is a member of a social organization or fraternity known as the "Mad Dogs," which originated on the campus of Central State University in Wilberforce,

Ohio.  The members joined the organization while attending Central State University.

Each year, on Good Friday, the members host a party called the Mad Dog Ball.  The ball is held in a different Ohio city each year.  In 2007, the Mad Dog Ball was held in Cleveland, Ohio at the Mirage Night Club; those in attendance included Shabazz Abdul, Gregory Rodgers, William Green, Theodore Carter, Charles Gatson, Dwayne Saunders and Dale Becket.

At trial, the State presented the testimony of 13 witnesses including William Green, who testified that after leaving the 2007 Mad Dog Ball, he proceeded to an after-hour party at the home of fellow Mad Dog member, Theodore Carter.  Green testified that fellow members Dwayne Saunders and the victim, Gregory Rodgers, traveled with him to Carter's home.

Green testified that he observed Carter and Rodgers talking.  Rodgers whispered something to Carter, who then stated "well, you got to get out of my house." Rodgers agreed to leave, began using profanity, and proceeded downstairs towards the living room.

Because Rodgers had traveled with Green to Carter's home, he also decided to leave.  As Green walked downstairs towards the living room, other guests indicated that Shabazz Abdul pushed Rodgers down the steps.  Green observed Shabazz Abdul exit the home through the back door and re-enter the home a few moments later.

When Shabazz Abdul re-entered the home, he had a small chrome-plated semi-automatic pistol in his hand.  Shabazz Abdul cocked the gun, rushed up, placed the gun to Rodgers' head and pulled the trigger and then he calmly walked back up the stairs.

As Shabazz Abdul walked up the stairs, he turned around with the gun pointed at Green.  As Shabazz Abdul continued to walk up the stairs, he stated: "I just killed Gromo.  I'm killer Casy.  Anybody else want some?"

Green testified about the aftermath of the shooting as follows:
"Q.  Did you hear from the Defendant after that?
A.  Yes.
Q.  And how did you hear from him?
A.  He called me.

3

Q. And what if anything did he say at that time?
A. He seemed to be very, he seemed to be very remorseful and panic stricken himself, at this point, at which he said he didn't know if he should go kill himself. He said, what should I do, he said, just go kill myself? I told him, no, don't do that. He should turn himself in.
Q. Did he say anything else to you?
A. And he tried to say that it was an accident. I tried to tell him, no, it wasn't no accident. He just kind of got a temper back, said, what, you snitching, you snitching? I said, no, because I was scared, myself, at that point, scared for myself and scared for my little six year old child. I don't know if he's going to double back to Cleveland, come try to kill me.
Q. Did the Defendant ever call you after that?
A. Yes.
Q. What, if anything, did he tell you at that time?
A. He said he was going to get a lawyer and turn himself in, to get everything straightened out.
Q. What did you say to him?
A. I told him that was the best thing he could do. He promised me he would turn himself in."

Theodore Carter testified that there were approximately 30 to 40 people present at his home for the after-hour party. The guests were socializing and having a good time.

During the course of the party, Rodgers called Carter a "bitch" and he asked Rodgers to leave. Rodgers agreed to leave, proceeded down the steps, but turned around, came back upstair and stated: "You all are bitches." Rodgers proceeded downstairs with Shabazz Abdul following behind him.

A few moments later Carter heard a gun shot, went downstairs, and saw Rodgers slumped on the steps. Shabazz Abdul came up the stairs and stated that Rodgers was playing, because they were only blank shots.

Dwayne Saunders testified that he also attended the after-hour party at Carter's home. Saunders observed Shabazz Abdul kiss Rodgers, told him he loved him, and Rodgers responded that he loved Shabazz Abdul, but could not respect him for what he had done to him upstairs. Shabazz Abdul reminded Rodgers that he "messed" with guns, then Shabazz Abdul went out to his car.

Saunders testified as follows about the ensuing events:
"Q. Then what did you see happen?
A. When he came back in, me and Gro [Rodgers] were standing there and Gro said, you didn't have to go get a gun for me did you? I don't know if he said, did you have to go get a gun or did you have to go get that for me? And, from that point, he came in.
Q. Who came in?
A. Brandon. And, that's when he shot him.
Q. Can you describe how he shot him?
A. Yeah. We were standing on the landing when Brandon came in, basically just walked like this, three steps. And, we was on the first level. And, I think Brandon might have walked up one, maybe two steps and in between the wall and Gro and pulled the trigger."

Shabazz Abdul shot Rodgers point blank on the left side of his head. A few days after the shooting, Shabazz Abdul contacted Saunders by phone. During their conversation, Shabazz Abdul claimed that the shooting was an accident and that he used blanks.

Dr. Erica Armstrong, a forensic pathologist with the Cuyahoga County Coroner's Office, testified that she performed the autopsy on Rodgers. Dr. Armstrong said the bullet entered Rodgers from the left side of his head and that the bullet had been fired from a distance of 12 inches or less.

Dale Beckett, who testified for the defense, said that he was not a member of the Mad Dog organization, but he was invited to the ball by Shabazz Abdul, whom he has known for approximately 30 years.

While at the after-hour party, Beckett heard Carter tell Rodgers to leave his home, because Rodgers was being obnoxious. Beckett observed Shabazz Abdul and Rodgers standing on the stairway with their arms around each other. Beckett said that it appeared to him that as Rodgers was in the process of putting on his jacket, a gun fell to the ground.

Beckett testified about the shooting, as follows:
"A. It appeared to me like it came from that jacket. But, Shabazz, he seen the pistol and he said, man, what the hell is this? You don't need no gun for me. That's what it sounded like he said. I can't be exact, but it sounded like.
Q. This is Shabazz saying that to the victim?

> A. To the victim.  And as he went to put his jacket on, he put his hand through the arm and that's when I heard the gun go off.  And, when the gun went off, he grabbed the side of his face and sat down on the step and he was rocking.
> Q. Where was the gun when it went off; you see that?
> A. The gun was in Shabazz's hands.
> Q. How did he get shot then?
> A. That, I don't know.  It seemed to me when he put his jacket on, it hit his hand.
> Q. Hit whose hands?
> A. Actually, Shabazz's hand.  He hit Shabazz's hand.  That's what caused-from my vantage point, that's what it looked like to me.  * * * "
>
> On November 16, 2007, Shabazz Abdul requested a jury instruction on the lesser-included offenses of reckless homicide, negligent homicide, and involuntary manslaughter.  The State requested a jury instruction on the lesser-included offense of murder.  The trial court instructed the jury on aggravated murder, murder, reckless homicide, and negligent homicide.
>
> On November 19, 2007, the jury found Shabazz Abdul guilty of murder with the three-year firearm specification attached.  On November 28, 2007, the trial court found Shabazz Abdul guilty of the notice of prior conviction and repeat violent offender specifications.  The trial court sentenced Shabazz Abdul to a prison term of 15 years to life for the murder charge and three years for the firearm specification.  The trial court ordered consecutive sentences.

(Doc. 6, RX 16, at 1-8; State v. Abdul, No. 90789, 2009 WL 147403, at *1-*3 (Ohio Ct. App. Jan. 22, 2009) (footnotes to transcript omitted).)

### A. Direct Appeal

Shabazz filed a timely direct appeal of his conviction through counsel, which raised the following assignments of error:

> 1. Appellant was not afforded effective assistance of counsel when defense counsel failed to inquire concerning prospective jurors bias towards members of the Muslim faith.

>   2. The trial court erred in denying appellant's motion for acquittal where evidence is not sufficient to support conviction.

(Doc. 6, RX 10.) In addition, Shabazz filed a supplemental brief pro se, which raised the following four additional assignments of error, verbatim:

>   [3.] Appellant was not afforded effective assistance of counsel when defense counsel failed to inquire about a state key witness (William Green) extensive criminal record, claiming they forgot, making him seem like a credible witness to the jury.
>
>   [4.] Defendant-Appellant wasn't afforded a fair trial, due to court not subpoenaing Defendant-Appellant witnesses, which violated Defendant-Appellant Due Process Rights to a fair trial, the Defendant-Appellant was indigent, therefore the court should of cover the cost, Defendant had one of the witnesses violateerly come forward, doesn't mean that rights wasn't violated because Defendant gave court appointed attorney a list of witnesses to be called on Defendant-Appellant behalf and court failed to subpoena witnesses.
>
>   [5.] Prejudice exist toward Defendant-Appellant when Defendant ask trial judge to dismiss court appointed attorney due to conflict of interest, attorney told Defendant-Appellant that he wasn't entitled to (Motion to Discover). Court granted (Motion to Discover) to the defense on 6/8/07, attorney never shared information with Defendant-Appellant until after Defendant ask the judge in Sept 2007 could he fire attorney, judge stated (no) Defendant-Appellant finally received motion to discover four days before trial 11/14/07, which Defendant felt the attorney violated Criminal Rule #16, and showed prejudice toward Defendant, for asking for new state representation.
>
>   [6.] Court failed to grant Defendant-Appellant a preliminary hearing violating Criminal Rule 5#, Defendant-Appellant filed motion pro-se for dismissal due to the error on Sept 24th 2007, and court never ruled on motion.

(Doc. 6, RX 11.) On Jan. 22, 2009, the court of appeals affirmed his conviction.

(Doc. 6, RX 16; State v. Abdul, No. 90789, 2009 WL 147403, at *1-*3 (Ohio Ct. App.

7

Jan. 22, 2009).) Shabazz filed a motion for reconsideration, which was denied. (Doc. 6, RX 17-18.)

Shabazz filed a timely appeal to the Supreme Court of Ohio. (Doc. 6, RX 19.) He set forth the following propositions of law:

> 1. Defendant-Appellant wasn't afforded effective assistance of counsel when defense counsel failed to question prospective jurors about would they be bias[ed] toward a individual of Islamic faith.
>
> 2. The trial court err[ed] in denying Defendant-Appellant's "Motion for Acquittal" pursuant to criminal rule 29 of the Ohio rules of Procedure where evidence is not sufficient to support the conviction.

(Doc. 6, RX 20, at 8, 10.) On June 17, 2009, the state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, RX 22; State v. Abdul-Shabazz, 122 Ohio St.3d 1412, 907 N.E.2d 1195 (2009).)

### B. Petition to Vacate or Set Aside Sentence

In addition to his direct appeal, Shabazz had filed a petition for post-conviction relief in the trial court on July 21, 2008. (Doc. 6, RX 23.) The trial court denied the petition on Jan. 29, 2010. (Doc. 6, RX 26.)

Shabazz filed a timely notice of appeal, raising seven assignments of error:

> 1. Trial court err[ed] by allowing state's key witnesses to perjure themselves which prevented Defendant-Appellant from having a fair trial base[d] on true facts.
>
> 2. Prosecutor abused [their] discretion, when they failed to respond to Defendant-Appellant's brief in a timely manner and in accordance with O.R.C. 2953.21 Post-Conviction Procedure.

> 3. Trial counsel misconduct and failure to adequately prepare for trial by refusing to [subpoena] key witnesses and purposely withholding evidence from Defendant-Appellant and jury which prevented a fair trial.
>
> 4. Trial court err[ed] when they didn't afford Defendant-Appellant time to respond to States brief of opposition before making a decision.
>
> 5. Trial counsel failure to reveal State key witness William Green's extensive criminal record to jury and trial court making him a creditable witness, violated Defendant-Appellant's right to effective counsel.
>
> 6. Trial court err[ed] when they didn't afford Defendant-Appellant the right to a Preliminary hearing violating O.R.C. 2945.71-73 criminal rule #5 procedure.
>
> 7. Prosecutorial and Police misconduct when they withheld key evidence such as, police statements from key witnesses they interviewed [at] scene of incident and given false information to coroner, so that the ruling would be determine[d] a certain way.

(Doc. 6, RX 36.)

The court of appeals has since overruled his assignments of error, and affirmed the judgment of the lower court. The court found that the first, third, fifth, sixth, and seventh assignments of error were barred by res judicata. The court ruled against the second and fourth assignments on the merits. State v. Shabazz, No. 94738, 2010 WL 4868011 (Ohio Ct. App. Nov. 24, 2010).

C.  Rule 26(B) Application

Finally, on May 7, 2009, Shabazz filed an application to reopen his appeal under Ohio App. Rule 26(B). Shabazz asserted ineffective assistance of appellate counsel on two grounds, verbatim:

9

> 1. Appellate counsel was ineffective for his failure to pursue trial counsels deficient performance in there withholding evidence from Defendant-Appellant during pre-trials and trial and for not subpeona key witnesses for Defendant-Appellant violating his 6th and 14th amendment rights.
>
> 2. The court error when they didnt afford Defendant-Appellant the right to dismiss State appointed counsel due to them withholding criminal 16# and other evidence that would of change the out come of this case. The court stated that they would see to it that Defendant-Appellant would receive everything, because said counsels were excellent, the attorneys were not dismiss by court, and therefore took offense to Defendant-Appellant trying to dismiss them and there deficient performance showed along with prejudice toward Defendant-Appellant, during trial because Defendant-Appellant never receive "Motion to Discover" nor was any of the Defendant-Appellant witnesses subpeona (see pages 7-10) of transcript attach. The Defendant-Appellant constitutional rights have been violated due to this under 6th and 14th amendment.

(Doc. 6, RX 27.)  On Dec. 1, 2009, the court of appeals denied his motion to reopen.

(Doc. 6, RX 30; State v. Abdul, No. 90789, 2009 WL 4406075 (Ohio Ct. App. Dec. 1, 2009).)

Shabazz filed an appeal to the Supreme Court of Ohio.  (Doc. 6, RX 31-32.) He set forth the following propositions of law, verbatim:

> 1. Defendant-Appellant was not afforded effective assistance of Appeal counsel when he failed to raise the issue that the trial court error when they deprived Defendant-Appellant sixth amendment right to effective assistance of trial counsel when it failed to make an adequate and timely inquiry into Defendant-Appellants complaints of trial counsel.
>
> 2. Appellant counsel was ineffective for his failure to pursue trial counsels "Deficient Performance" in withholding key evidence from Defendant-Appellant during pretrials and trial and for not subpeonaing key witnesses that would of change the outcome of the case, violating Defendant-Appellant sixth amendment right to effective assistance of counsel and fourteenth amendment right to a fair trial without prejudice.

10

(Doc. 6, RX 32, at 11.) On March 3, 2010, the state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, RX 34; State v. Abdul, 124 Ohio St.3d 1494, 922 N.E.2d 229 (2010).)

On July 21, 2010, Shabazz filed this petition for a writ of habeas corpus. (Doc. 1.) The respondent has filed a motion to dismiss. (Doc. 6.)

Shabazz has also filed a "Motion for Discovery" (doc. 8) and a "Motion to Compel" (doc. 12). In both of these motions, Shabazz seeks the production of all statements made to the police by certain trial witnesses. Shabazz claims that these statements will prove his ineffective assistance of counsel claim, and that these witnesses perjured themselves at trial. (Doc. 12, at 2.) Respondent opposes the motion(s). (Doc. 9.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a

11

> decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

III.  RESPONDENT'S MOTION TO DISMISS

The respondent argues that Shabazz's petition should be dismissed because the first and fourth grounds have not been exhausted, because, at the time the petition was filed, the petition for post-conviction relief had not yet been exhausted in the state courts.  The respondent concedes that the second and third grounds were raised on direct appeal, thus exhausted.  (Doc. 6, at 12.)

A.  Exhaustion

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).

13

The first and fourth grounds of the habeas petition both assert ineffective assistance of appellate counsel.  (Doc. 1.)  The respondent appears to recognize that these claims were raised in the Rule 26(B) application to reopen, but contends that the claims have not been exhausted because the appeals of the denial of the petition for post-conviction relief may still be pending, and these claims may have also been raised in that petition.  (Doc. 6, at 12, citing doc. 6, RX 30, at 1 n.2; Abdul, 2009 WL 4406075, at *1 n.2.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland,[2] the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).  See generally Strickland, 466 U.S. at 689 (two-part test).  A criminal appellant is constitutionally entitled to the

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

effective assistance of counsel in his direct appeal, as well as at trial. Evitts v. Lucey, 469 U.S. 387 (1985).

The Ohio Supreme Court has held that "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." Monzo, 281 F.3d at 578 (quoting State v. Williams, 74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254 (1996) (per curiam)). Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open his appeal before the Ohio Court of Appeals. Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).

Shabazz did present two claims of ineffective assistance of appellate counsel through his Rule 26(B) application to reopen his appeal, which he filed in the state court of appeals on May 7, 2009. (Doc. 6, RX 27.) After the appellate court denied his application, he filed an appeal of those claims in the Supreme Court of Ohio. (Doc. 6, RX 31-32.)

### 1. Fourth ground of habeas petition

The first claim in his Rule 26(B) application was stated as follows:

> 1. Appellate counsel was ineffective for his failure to pursue trial counsels deficient performance in there withholding evidence from Defendant-Appellant during pre-trials and trial and for not subpeona key witnesses for Defendant-Appellant violating his 6th and 14th amendment rights.

(Doc. 6, RX 27.) The fourth ground of his habeas petition presents essentially the same argument:

15

> 4. Appellant counsel was ineffective for his failure to pursue trial counsels "Deficient Performance" in which key evidence was withheld from Petitioner Shabazz during pre-trials and trial, and for not subpoenaing key witnesses for the Petitioner which would of change the outcome of the case, violated Petitioner Shabazz Sixth and Fourteenth amendment right to effective assistance to counsel, and a right to a fair trial without any bias or prejudice.

(Doc. 1.) The court finds that the fourth ground of the habeas petition has been exhausted in the state courts.

Shabazz gave the state courts a full opportunity to address the issue "by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. The highest court in the state was given a full and fair opportunity to rule on his claim. Rust, 17 F.3d at 160. The exhaustion requirement is satisfied when the petitioner has raised his claims before the state's highest court. Clinkscale v. Carter, 375 F.3d 430, 437 (6th Cir. 2004), cert. denied, 543 U.S. 1177 (2005) (citing Manning, 912 F.2d at 883). "A petitioner need exhaust only one avenue of relief in state court before bringing a federal habeas petition." Jackson v. Borg, 992 F.2d 1219, 1993 WL 140594, at *1 (9th Cir. 1993) (TABLE, text in WESTLAW) (citing Turner v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987)).

### 2.  First ground of habeas petition

The second claim in the Rule 26(B) application was stated as follows:

> 2. The court error when they didnt afford Defendant-Appellant the right to dismiss State appointed counsel due to them withholding criminal 16# and other evidence that would of change the out come of this case. The court stated that they would see to it that Defendant-Appellant would receive everything, because said counsels were excellent, the attorneys were not dismiss by court, and therefore took offense to Defendant-Appellant trying to dismiss them and there

> deficient performance showed along with prejudice toward Defendant-Appellant, during trial because Defendant-Appellant never receive "Motion to Discover" nor was any of the Defendant-Appellant witnesses subpeona (see pages 7-10) of transcript attach. The Defendant-Appellant constitutional rights have been violated due to this under 6th and 14th amendment.

(Doc. 6, RX 27.) As presented in his habeas petition, the first ground is stated as:

> 1. Ineffective assistance of Appellant Counsel when he failed to raise the issue that trial court deprived Petitioner Shabazz of his Sixth Amendment right to effective assistance of trial counsel when it failed to make an adequate and timely inquiry into Petitioner Shabazz complaints of trial counsel.

(Doc. 1.)

The respondent argues that this claim was not presented to the state courts under the same theory which is now presented. For example, respondent argues that the first ground actually was presented as an error of the trial court. (Doc. 6, at 14.)

Reviewing the Rule 26(B) application, it is apparent that Shabazz raised the issue in the context of alleged "Assignments of Error Not Considered on Appeal Due to Counsel's Ineffectiveness." See doc. 6, RX 27, at 2-3. Likewise, the court of appeals stated that "Abdul asserts that his appellate counsel was ineffective because he did not argue. . . (2) that the trial court erred in not granting Abdul's motion to appoint new counsel." (Doc. 6, RX 30, at 1; Abdul, 2009 WL 4406075, at *1.) The court finds that the first ground of the habeas petition has been exhausted in the state courts.

### B. Merits of the Claims

The respondent urges the court to rule on the merits of the claims, and provides arguments as to why each of the four grounds should not be granted on the merits. (Doc. 6, at 16-23.)

In his "Traverse Motion of Reply," Shabazz disputes that the first and fourth grounds are unexhausted. (Doc. 10, at 8.) He urges this court to "hear the issue[s] that are now presented that have been exhausted." Id. He does not respond to the merits arguments presented in the respondent's motion to dismiss.

The motion to dismiss was based on the argument that two of the four grounds of the habeas petition had not been exhausted. See generally doc. 6. The court was urged to consider the merits of the claims as an acceptable option for addressing a mixed petition. However, finding the contested grounds to have been exhausted, the court determines that the habeas petition is not a mixed petition, and finds that it would be premature to adjudicate the merits without the petitioner having had the opportunity to file a Traverse on the merits.

The motion to dismiss (doc. 6) should be denied.

### IV. DISCOVERY MOTIONS

As mentioned earlier, Shabazz has filed a "Motion for Discovery" (doc. 8) and a "Motion to Compel" (doc. 12). Shabazz seeks the production of all statements made to the police by certain trial witnesses. Shabazz claims that these statements will prove his ineffective assistance of counsel claim, and that these witnesses

18

perjured themselves at trial. (Doc. 12, at 2.) Respondent opposes the motion(s). (Doc. 9.)

The court makes several observations. First, and most importantly, several of these individuals (Ted Carter, William Green, and Dwayne Saunders) testified as eyewitnesses at trial. (Doc. 6, RX 16, at 2-6; Abdul, 2009 WL 147403, at *1-*3; see also doc. 6, RX, Transcript, at 3 (index of testimony). The issue of conflicting eyewitness accounts was raised at trial.

Secondly, a habeas petitioner "is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); Beuke v. Houk, 537 F.3d 618, 654 (6th Cir.), cert. denied, 129 S.Ct. 2792 (2008); Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001), cert. denied, 537 U.S. 831 (2002). For good cause shown, a district court has the discretion to permit discovery in a habeas proceeding, pursuant to Habeas Rule 6(a), "provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." Cornwell v. Bradshaw, 559 F.3d 398, 410 (6th Cir. 2009), cert. denied, 130 S.Ct. 1141(2010) (quoting Lott v. Coyle, 261 F.3d 594, 602 (6th Cir. 2001)).

The state court record should contain all that Shabazz requires to press his habeas claims based on ineffective assistance of counsel and sufficiency of the evidence. The motions for discovery (doc. 8, 12) are denied.

V. SUMMARY

The motion to dismiss (doc. 6) should be denied, because the court finds that Shabazz exhausted his first and fourth grounds in the state courts.

The motions for discovery (doc. 8, 12) are denied.

RECOMMENDATION

It is recommended that the motion to dismiss be denied.

Dated:  Apr. 14, 2011                        /s/ Kenneth S. McHargh
                                             Kenneth S. McHargh
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).