UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMIL ABDUL SHABAZZ,             ) 1:10CV1598
                                 )
          Petitioner             ) JUDGE PATRICIA GAUGHAN
                                 ) (Magistrate Judge Kenneth S. McHargh)
          v.                     )
                                 )
ROBERT WELCH,                    )
          Warden,                )
                                 )
          Respondent             ) REPORT AND RECOMMENDED
                                 ) DECISION OF MAGISTRATE JUDGE


McHARGH, MAG. J.

     The petitioner Jamil Abdul Shabazz[1] ("Shabazz") filed a petition pro se for a

writ of habeas corpus arising out of his 2007 conviction for murder, in the Cuyahoga

County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition, Shabazz raises

four grounds for relief, verbatim:

          1.  Ineffective assistance of Appellant Counsel when he failed to raise
          the issue that trial court deprived Petitioner Shabazz of his Sixth
          Amendment right to effective assistance of trial counsel when it failed
          to make an adequate and timely inquiry into Petitioner Shabazz
          complaints of trial counsel.

          2.  Petitioner was not afforded effective assistance of counsel when
          trial counsel failed to inquire concerning prospective jurors bias
          towards members of the muslim faith.

---

     [1]  Petitioner's correct name is "Jamil Abdul Shabazz."  (Doc. 21, at 1.) The
petitioner was formerly known as "Garrett Brandon," and his name has appeared
(incorrectly) as "Jamill Shabazz Abdul" or "Jamil Shabazz Abdul."  See, e.g., State
v. Abdul, No. 90789, 2009 WL 147403, at *1 n.1 (Ohio Ct. App. Jan. 22, 2009).

3.  The trial court error in denying Petitioners motion for Acquittal where the evidence is not sufficient to support conviction.

4.  Appellant counsel was ineffective for his failure to pursue trial counsels "Deficient Performance" in which key evidence was withheld from Petitioner Shabazz during pre-trials and trial, and for not subpoenaing key witnesses for the Petitioner which would of change the outcome of the case, violated Petitioner Shabazz Sixth and Fourteenth amendment right to effective assistance to counsel, and a right to a fair trial without any bias or prejudice.

(Doc. 1.)  The respondent has filed a Return of Writ (doc. 16), and Shabazz has filed a Traverse (doc. 21).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

On April 26, 2007, a Cuyahoga County Grand Jury indicted Shabazz Abdul on one count of aggravated murder.  The indictment included a three-year firearm specification, notice of prior conviction, and repeat violent offender specification.

On November 13, 2007, Shabazz Abdul executed a jury waiver as to the notice of prior conviction and repeat violent offender specification. On that same date, a jury trial commenced on the remaining charge of aggravated murder with a three-year firearm specification attached.

Jury Trial
At trial, the evidence established that Shabazz Abdul is a member of a social organization or fraternity known as the "Mad Dogs," which originated on the campus of Central State University in Wilberforce, Ohio.  The members joined the organization while attending Central State University.

Each year, on Good Friday, the members host a party called the Mad Dog Ball.  The ball is held in a different Ohio city each year.  In 2007, the Mad Dog Ball was held in Cleveland, Ohio at the Mirage Night

2

Club; those in attendance included Shabazz Abdul, Gregory Rodgers, William Green, Theodore Carter, Charles Gatson, Dwayne Saunders and Dale Becket.

At trial, the State presented the testimony of 13 witnesses including William Green, who testified that after leaving the 2007 Mad Dog Ball, he proceeded to an after-hour party at the home of fellow Mad Dog member, Theodore Carter. Green testified that fellow members Dwayne Saunders and the victim, Gregory Rodgers, traveled with him to Carter's home.

Green testified that he observed Carter and Rodgers talking. Rodgers whispered something to Carter, who then stated "well, you got to get out of my house." Rodgers agreed to leave, began using profanity, and proceeded downstairs towards the living room.

Because Rodgers had traveled with Green to Carter's home, he also decided to leave. As Green walked downstairs towards the living room, other guests indicated that Shabazz Abdul pushed Rodgers down the steps. Green observed Shabazz Abdul exit the home through the back door and re-enter the home a few moments later.

When Shabazz Abdul re-entered the home, he had a small chrome-plated semi-automatic pistol in his hand. Shabazz Abdul cocked the gun, rushed up, placed the gun to Rodgers' head and pulled the trigger and then he calmly walked back up the stairs.

As Shabazz Abdul walked up the stairs, he turned around with the gun pointed at Green. As Shabazz Abdul continued to walk up the stairs, he stated: "I just killed Gromo. I'm killer Casy. Anybody else want some?"

Green testified about the aftermath of the shooting as follows:
"Q. Did you hear from the Defendant after that?
A. Yes.
Q. And how did you hear from him?
A. He called me.
Q. And what if anything did he say at that time?
A. He seemed to be very, he seemed to be very remorseful and panic stricken himself, at this point, at which he said he didn't know if he should go kill himself. He said, what should I do, he said, just go kill myself? I told him, no, don't do that. He should turn himself in.
Q. Did he say anything else to you?

3

A.  And he tried to say that it was an accident.  I tried to tell him, no, it wasn't no accident.  He just kind of got a temper back, said, what, you snitching, you snitching? I said, no, because I was scared, myself, at that point, scared for myself and scared for my little six year old child. I don't know if he's going to double back to Cleveland, come try to kill me.

Q.  Did the Defendant ever call you after that?

A.  Yes.

Q.  What, if anything, did he tell you at that time?

A.  He said he was going to get a lawyer and turn himself in, to get everything straightened out.

Q.  What did you say to him?

A.  I told him that was the best thing he could do.  He promised me he would turn himself in."

Theodore Carter testified that there were approximately 30 to 40 people present at his home for the after-hour party.  The guests were socializing and having a good time.

During the course of the party, Rodgers called Carter a "bitch" and he asked Rodgers to leave.  Rodgers agreed to leave, proceeded down the steps, but turned around, came back upstair and stated: "You all are bitches." Rodgers proceeded downstairs with Shabazz Abdul following behind him.

A few moments later Carter heard a gun shot, went downstairs, and saw Rodgers slumped on the steps.  Shabazz Abdul came up the stairs and stated that Rodgers was playing, because they were only blank shots.

Dwayne Saunders testified that he also attended the after-hour party at Carter's home.  Saunders observed Shabazz Abdul kiss Rodgers, told him he loved him, and Rodgers responded that he loved Shabazz Abdul, but could not respect him for what he had done to him upstairs. Shabazz Abdul reminded Rodgers that he "messed" with guns, then Shabazz Abdul went out to his car.

Saunders testified as follows about the ensuing events:

"Q.  Then what did you see happen?

A.  When he came back in, me and Gro [Rodgers] were standing there and Gro said, you didn't have to go get a gun for me did you? I don't know if he said, did you have to go get a gun or did you have to go get that for me? And, from that point, he came in.

4

Q.  Who came in?
A.  Brandon.  And, that's when he shot him.
Q.  Can you describe how he shot him?
A.  Yeah.  We were standing on the landing when Brandon came in, basically just walked like this, three steps.  And, we was on the first level.  And, I think Brandon might have walked up one, maybe two steps and in between the wall and Gro and pulled the trigger."

Shabazz Abdul shot Rodgers point blank on the left side of his head.  A few days after the shooting, Shabazz Abdul contacted Saunders by phone.  During their conversation, Shabazz Abdul claimed that the shooting was an accident and that he used blanks.

Dr. Erica Armstrong, a forensic pathologist with the Cuyahoga County Coroner's Office, testified that she performed the autopsy on Rodgers.  Dr. Armstrong said the bullet entered Rodgers from the left side of his head and that the bullet had been fired from a distance of 12 inches or less.

Dale Beckett, who testified for the defense, said that he was not a member of the Mad Dog organization, but he was invited to the ball by Shabazz Abdul, whom he has known for approximately 30 years.

While at the after-hour party, Beckett heard Carter tell Rodgers to leave his home, because Rodgers was being obnoxious.  Beckett observed Shabazz Abdul and Rodgers standing on the stairway with their arms around each other.  Beckett said that it appeared to him that as Rodgers was in the process of putting on his jacket, a gun fell to the ground.

Beckett testified about the shooting, as follows:
"A.  It appeared to me like it came from that jacket.  But, Shabazz, he seen the pistol and he said, man, what the hell is this? You don't need no gun for me.  That's what it sounded like he said.  I can't be exact, but it sounded like.
Q.  This is Shabazz saying that to the victim?
A.  To the victim.  And as he went to put his jacket on, he put his hand through the arm and that's when I heard the gun go off.  And, when the gun went off, he grabbed the side of his face and sat down on the step and he was rocking.
Q.  Where was the gun when it went off; you see that?
A.  The gun was in Shabazz's hands.
Q.  How did he get shot then?

5

A.  That, I don't know.  It seemed to me when he put his jacket on, it
hit his hand.
Q.  Hit whose hands?
A.  Actually, Shabazz's hand.  He hit Shabazz's hand.  That's what
caused-from my vantage point, that's what it looked like to me.  * * * "

On November 16, 2007, Shabazz Abdul requested a jury instruction on
the lesser-included offenses of reckless homicide, negligent homicide,
and involuntary manslaughter.  The State requested a jury instruction
on the lesser-included offense of murder.  The trial court instructed the
jury on aggravated murder, murder, reckless homicide, and negligent
homicide.

On November 19, 2007, the jury found Shabazz Abdul guilty of murder
with the three-year firearm specification attached.  On November 28,
2007, the trial court found Shabazz Abdul guilty of the notice of prior
conviction and repeat violent offender specifications.  The trial court
sentenced Shabazz Abdul to a prison term of 15 years to life for the
murder charge and three years for the firearm specification.  The trial
court ordered consecutive sentences.

(Doc. 6, RX 16, at 1-8; State v. Abdul, No. 90789, 2009 WL 147403, at *1-*3 (Ohio

Ct. App. Jan. 22, 2009) (footnotes to transcript omitted).)

## A.  Direct Appeal

Shabazz filed a timely direct appeal of his conviction through counsel, which

raised the following assignments of error:

1. Appellant was not afforded effective assistance of counsel when
defense counsel failed to inquire concerning prospective jurors bias
towards members of the Muslim faith.

2. The trial court erred in denying appellant's motion for acquittal
where evidence is not sufficient to support conviction.

(Doc. 6, RX 10.)  In addition, Shabazz filed a supplemental brief pro se, which raised

the following four additional assignments of error, verbatim:

6

[3.]  Appellant was not afforded effective assistance of counsel when defense counsel failed to inquire about a state key witness (William Green) extensive criminal record, claiming they forgot, making him seem like a credible witness to the jury.

[4.]  Defendant-Appellant wasn't afforded a fair trial, due to court not subpoenaing Defendant-Appellant witnesses, which violated Defendant-Appellant Due Process Rights to a fair trial, the Defendant-Appellant was indigent, therefore the court should of cover the cost, Defendant had one of the witnesses violateerly come forward, doesn't mean that rights wasn't violated because Defendant gave court appointed attorney a list of witnesses to be called on Defendant-Appellant behalf and court failed to subpoena witnesses.

[5.]  Prejudice exist toward Defendant-Appellant when Defendant ask trial judge to dismiss court appointed attorney due to conflict of interest, attorney told Defendant-Appellant that he wasn't entitled to (Motion to Discover).  Court granted (Motion to Discover) to the defense on 6/8/07, attorney never shared information with Defendant-Appellant until after Defendant ask the judge in Sept 2007 could he fire attorney, judge stated (no) Defendant-Appellant finally received motion to discover four days before trial 11/14/07, which Defendant felt the attorney violated Criminal Rule #16, and showed prejudice toward Defendant, for asking for new state representation.

[6.]  Court failed to grant Defendant-Appellant a preliminary hearing violating Criminal Rule 5#, Defendant-Appellant filed motion pro-se for dismissal due to the error on Sept 24th 2007, and court never ruled on motion.

(Doc. 6, RX 11.)  On Jan. 22, 2009, the court of appeals affirmed his conviction.

(Doc. 6, RX 16; State v. Abdul, No. 90789, 2009 WL 147403, at *1-*3 (Ohio Ct. App.

Jan. 22, 2009).)  Shabazz filed a motion for reconsideration, which was denied.

(Doc. 6, RX 17-18.)

Shabazz filed a timely appeal to the Supreme Court of Ohio.  (Doc. 6, RX 19.)

He set forth the following propositions of law:

7

1.  Defendant-Appellant wasn't afforded effective assistance of counsel when defense counsel failed to question prospective jurors about would they be bias[ed] toward a individual of Islamic faith.

2.  The trial court err[ed] in denying Defendant-Appellant's "Motion for Acquittal" pursuant to criminal rule 29 of the Ohio rules of Procedure where evidence is not sufficient to support the conviction.

(Doc. 6, RX 20, at 8, 10.)  On June 17, 2009, the state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 6, RX 22; State v. Abdul-Shabazz, 122 Ohio St.3d 1412, 907 N.E.2d 1195 (2009).)

## B.  Petition to Vacate or Set Aside Sentence

In addition to his direct appeal, Shabazz had filed a petition for post-conviction relief in the trial court on July 21, 2008.  (Doc. 6, RX 23.)  The trial court denied the petition on Jan. 29, 2010.  (Doc. 6, RX 26.)

Shabazz filed a timely notice of appeal, raising seven assignments of error:

1.  Trial court err[ed] by allowing state's key witnesses to perjure themselves which prevented Defendant-Appellant from having a fair trial base[d] on true facts.

2.  Prosecutor abused [their] discretion, when they failed to respond to Defendant-Appellant's brief in a timely manner and in accordance with O.R.C. 2953.21 Post-Conviction Procedure.

3.  Trial counsel misconduct and failure to adequately prepare for trial by refusing to [subpoena] key witnesses and purposely withholding evidence from Defendant-Appellant and jury which prevented a fair trial.

4.  Trial court err[ed] when they didn't afford Defendant-Appellant time to respond to States brief of opposition before making a decision.

8

5.  Trial counsel failure to reveal State key witness William Green's extensive criminal record to jury and trial court making him a creditable witness, violated Defendant-Appellant's right to effective counsel.

6.  Trial court err[ed] when they didn't afford Defendant-Appellant the right to a Preliminary hearing violating O.R.C. 2945.71-73 criminal rule #5 procedure.

7.  Prosecutorial and Police misconduct when they withheld key evidence such as, police statements from key witnesses they interviewed [at] scene of incident and given false information to coroner, so that the ruling would be determine[d] a certain way.

(Doc. 6, RX 36.)

The court of appeals has since overruled his assignments of error, and affirmed the judgment of the lower court.  The court found that the first, third, fifth, sixth, and seventh assignments of error were barred by res judicata.  The court ruled against the second and fourth assignments on the merits.  (Doc. 16, RX 38; State v. Shabazz, No. 94738, 2010 WL 4868011 (Ohio Ct. App. Nov. 24, 2010).)  On April 6, 2011, the Supreme Court of Ohio denied leave to appeal.  (Doc. 16, RX 41; State v. Shabazz, 128 Ohio St.3d 1445, 944 N.E.2d 695 (2011).)

### C.  Rule 26(B) Application

Finally, on May 7, 2009, Shabazz filed an application to reopen his appeal under Ohio App. Rule 26(B).  Shabazz asserted ineffective assistance of appellate counsel on two grounds, verbatim:

1.  Appellate counsel was ineffective for his failure to pursue trial counsels deficient performance in there withholding evidence from Defendant-Appellant during pre-trials and trial and for not subpeona key witnesses for Defendant-Appellant violating his 6th and 14th amendment rights.

9

2.  The court error when they didnt afford Defendant-Appellant the right to dismiss State appointed counsel due to them withholding criminal 16# and other evidence that would of change the out come of this case. The court stated that they would see to it that Defendant-Appellant would receive everything, because said counsels were excellent, the attorneys were not dismiss by court, and therefore took offense to Defendant-Appellant trying to dismiss them and there deficient performance showed along with prejudice toward Defendant-Appellant, during trial because Defendant-Appellant never receive "Motion to Discover" nor was any of the Defendant-Appellant witnesses subpeona (see pages 7-10) of transcript attach. The Defendant-Appellant constitutional rights have been violated due to this under 6th and 14th amendment.

(Doc. 6, RX 27.)  On Dec. 1, 2009, the court of appeals denied his motion to reopen.

(Doc. 6, RX 30; State v. Abdul, No. 90789, 2009 WL 4406075 (Ohio Ct. App. Dec. 1, 2009).)

Shabazz filed an appeal to the Supreme Court of Ohio.  (Doc. 6, RX 31-32.)

He set forth the following propositions of law, verbatim:

1.  Defendant-Appellant was not afforded effective assistance of Appeal counsel when he failed to raise the issue that the trial court error when they deprived Defendant-Appellant sixth amendment right to effective assistance of trial counsel when it failed to make an adequate and timely inquiry into Defendant-Appellants complaints of trial counsel.

2. Appellant counsel was ineffective for his failure to pursue trial counsels "Deficient Performance" in withholding key evidence from Defendant-Appellant during pretrials and trial and for not subpeonaing key witnesses that would of change the outcome of the case, violating Defendant-Appellant sixth amendment right to effective assistance of counsel and fourteenth amendment right to a fair trial without prejudice.

(Doc. 6, RX 32, at 11.)  On March 3, 2010, the state high court denied leave to

appeal, and dismissed the appeal as not involving any substantial constitutional

question.  (Doc. 6, RX 34; State v. Abdul, 124 Ohio St.3d 1494, 922 N.E.2d 229 (2010).)

Shabazz filed a timely petition for a writ of habeas corpus.  (Doc. 1.)  The respondent had filed a motion to dismiss (doc. 6), which was denied by the court (doc. 13, 14).  After that ruling, the respondent filed a Return of Writ (doc. 16), and Shabazz filed a Traverse (doc. 21).

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III.  SUFFICIENCY OF THE EVIDENCE

The third ground of the petition is that the trial court erred in denying the motion for acquittal because "the evidence is not sufficient to support conviction." (Doc. 1, § 12.)  Shabazz states that trial counsel argued, in support of the motion, that "there were numerous material inconsistencies in the testimony of the State's two eyewitnesses," thus, the prosecution had not proved its case beyond a reasonable doubt.  (Doc. 1, at p. 10.)  In his petition, Shabazz raises the question of whether the state proved he had the intent required.  Id. at p. 12.

The Sixth Circuit has held that a sufficiency of evidence claim should be the first issue ruled on in a habeas petition.  Russell v. Anderson, No. 1:07CV3434,

12

2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Joseph v. Coyle, 469 F.3d

441, 453-54 (6th Cir. 2006), cert. denied, 549 U.S. 1280 (2007)).

The respondent argues that the state court applied the correct constitutional

standard, and that its decision did not apply U.S. Supreme Court precedent in an

unreasonable way. (Doc. 16, at 35-38.)

The state court of appeals addressed Shabazz's claim as follows:

The sufficiency of the evidence standard of review is set forth in State
v. Bridgeman, [55 Ohio St.2d 261, 381 N.E.2d 184 (1978) (syllabus)]:

"Pursuant to Criminal Rule 29(A), a court shall not order an entry of
judgment of acquittal if the evidence is such that reasonable minds can
reach different conclusions as to whether each material element of a
crime has been proved beyond a reasonable doubt."

Bridgeman must be interpreted in light of the sufficiency test outlined
in State v. Jenks, [61 Ohio St.3d 259, 574 N.E.2d 492 (1991) (syllabus,
¶ 2], in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the
evidence to support a criminal conviction is to examine the evidence
submitted at trial to determine whether such evidence, if believed,
would convince the average mind of the defendant's guilt beyond a
reasonable doubt. The relevant inquiry is whether, after viewing the
evidence in a light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime proven
beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,
99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

After reviewing the evidence in a light most favorable to the State, we
find that the evidence, if believed, could convince a rational trier of fact
that the State had proven beyond a reasonable doubt each element of
the charge of murder, namely that Shabazz Abdul, as a principle,
purposely caused the death of Rodgers.

Two eye-witnesses, both members of the Mad Dog social organization,
testified that they saw Shabazz Abdul exit the residence, re-enter after
a few moments with a gun, and immediately shoot Rodgers in the

13

head. Both Green and Saunders testified that Shabazz Abdul shot
Rodgers at close range.  In addition, Dr. Armstrong, a forensic
pathologist, confirmed that Rodgers was shot in the head from a
distance of less than 12 inches.

Consequently, viewing the evidence in the light most favorable to the
State, we conclude that any rational trier of fact could have found that
the State proved all of the essential elements of murder beyond a
reasonable doubt.  Thus, the trial court properly denied Shabazz
Abdul's motion for acquittal.  Accordingly, we overrule the second
assigned error.

(Doc. 6, RX 16, at 9-10; Abdul, 2009 WL 147403, at *4 (footnotes omitted).)

The state court relied on State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991) (syllabus, ¶ 2), which followed the sufficiency of evidence standard set forth

in Jackson v. Virginia, 443 U.S. 307 (1979).  (Doc. 6, RX 16, at 9; Abdul, 2009 WL

147403, at *4.)  Thus, the issue is whether the state court decision was an

"unreasonable application" of clearly established federal law; in other words,

whether the state court identified the correct governing legal principle from

Supreme Court decisions, but unreasonably applied that principle to the facts of

Shabazz's case.  Williams, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is

reviewed by determining whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Bagby

v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).

As noted above, this was the standard applied by the state appellate court.  (Doc. 6,

14

RX 16, at 9-10; Abdul, 2009 WL 147403, at *4.)  Thus, the state court identified the correct governing legal principle from Jackson v. Virginia.

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence, but rather examines whether the trial court made a rational decision to convict or acquit.  Russell, 2008 WL 4534144, at *3 (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not "substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses."  Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).  It is the responsibility of the trier of fact "to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Nali v. Phillips, 630 F.Supp.2d 807, 816 (E.D. Mich. 2009).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime.  Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).

Shabazz was convicted of murder, a violation of Ohio Rev. Code § 2903.02(A), which states, in relevant part:  "No person shall purposely cause the death of

another . . ."  Ohio Rev. Code § 2903.02(A).  Under Ohio law, intent need not be proven by direct testimony, but "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." State v. Stallings, 89 Ohio St.3d 280, 290, 731 N.E.2d 159, 171 (2000), cert. denied, 534 U.S. 836 (2001) (quoting  State v. Robinson, 161 Ohio St. 213, 118 N.E.2d 517 (1954) (syllabus, ¶ 5)); see also  State v. Eley, 77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648 (1996); State v. Lott, 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302 (1990).

"It is well-settled in Ohio that the specific intention to kill may be inferred from the fact that a firearm was used to commit the offense because a firearm is 'an inherently dangerous instrumentality, the use of which is reasonably likely to produce death.'"  Crawford v. Warden, Warren Corr. Inst., No. 1:10CV541, 2011 WL 5307408, at *15 (S.D. Ohio Sept. 29, 2011) (quoting State v. Widner, 69 Ohio St.2d 267, 431 N.E.2d 1025, 1028 (1982)).

The state court found that "the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of murder," specifically, that Shabazz purposely caused the death of Rodgers.  (Doc. 6, RX 16, at 10; Abdul, 2009 WL 147403, at *4.)  The court noted that two eyewitnesses testified that they saw Shabazz shoot Rodgers in the head with a gun at close range.  The forensic pathologist also established that the cause of death was a gunshot wound at close range.  Id.

In his traverse, Shabazz attacks the credibility of the state's witnesses.  (Doc. 21, at 44-47.)  However, on habeas review this court may not weigh the credibility of the witnesses, which is the responsibility of the trier of fact.  Dover, 2009 WL 1940728, at *14; Nali, 630 F.Supp.2d at 816.

The petition should not be granted on the third ground, because Shabazz has failed to establish that the state court decision was an unreasonable application of clearly established federal law.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The second ground of the petition is ineffective assistance of trial counsel, specifically, "trial counsel failed to inquire concerning prospective jurors bias towards members of the muslim faith." (Doc. 1, § 12.)  This argument was raised on direct appeal, and the state court ruled:

> We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington, [466 U.S. 668 (1984)].  Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.  To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.  Judicial scrutiny of a lawyer's performance must be highly deferential.
>
> In the instant case, Shabazz Abdul cites State v. Atalla, [157 Ohio App.3d 698, 813 N.E.2d 84 (Ohio Ct. App. 2004], in support of his claim that defense counsel was ineffective for failing to voir dire prospective jurors about possible bias towards members of the Muslim faith.  However, we find Atalla distinguishable from the instant case and Shabazz Abdul's reliance on it misplaced.

17

> Contrary to Shabazz Abdul's representation, Atalla does not stand for the broad proposition that the failure to inquire about prospective jurors' religious biases renders trial counsel's assistance ineffective. Rather, the court addressed the specific issue of whether Atalla's defense counsel was ineffective for failing to object to the prosecutor's questions concerning his religion and ethnicity when it was done in such a way as to create bias among the entire jury pool.  The court further found that defense counsel added to the error in continuing the same line of questioning in a manner which created bias and prejudice in the minds of the potential jurors.
>
> Unlike the facts of Atalla, we find that defense counsel's decision not to draw attention to Shabazz Abdul's religion was a matter of trial strategy. Voir dire is largely a matter of strategy and tactics.  Actions of defense counsel which might be considered sound trial strategy are to be presumed effective.  As such, we conclude that trial counsel was not ineffective in choosing not to inquire about the prospective jurors' feelings about members of the Muslim faith.  Accordingly, we overrule the second assigned error.

(Doc. 6, RX 16, at 11-12; Abdul, 2009 WL 147403, at *4-*5 (footnotes omitted). )

The respondent argues that the state court applied the correct constitutional standard, and that its decision did not apply U.S. Supreme Court precedent in an unreasonable way.  (Doc. 16, at 31-35.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's

18

performance is highly deferential and requires that courts "indulge a
strong presumption that counsel's conduct falls within a wide range of
reasonable professional assistance."  To establish prejudice, the
defendant "must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would
have been different.  A reasonable probability is a probability sufficient
to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).

See generally Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance
claim "within the more limited assessment of whether the state court's application
of Strickland to the facts of this case was objectively unreasonable."  Washington v.
Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

The Supreme Court has recently affirmed in several cases that this court
must approach the state court's rulings in a highly deferential manner.  The
Supreme Court stated in Harrington v. Richter that the "pivotal question" of
whether the state court's application of Strickland standard was unreasonable is
different from simply deciding whether counsel's performance fell below
Strickland's standard.  Harrington v. Richter, 131 S.Ct. 770, 785 (2011).   The focus
on habeas review is "not whether counsel's actions were reasonable," rather, the
question is "whether there is any reasonable argument that counsel satisfied
Strickland's deferential standard."  Richter, 131 S.Ct. at 788; Premo v. Moore, 131
S.Ct. 733, 740 (2011).

As to the prejudice element, the petitioner "must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the

19

proceeding would have been different." Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (quoting Strickland, 466 U.S. at 694).  "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S.Ct. at 792.

In his traverse, Shabazz raises several issues of alleged ineffectiveness which were not presented in his direct appeal.  See doc. 21, at 41-42.  The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Jalowiec v. Bradshaw, No. 1:03CV0645, 2008 WL 312655, at *24 (N.D. Ohio Jan. 31, 2008), aff'd, 657 F.3d 293 (6th Cir. 2011).  Those issues which were not fairly presented to the state courts cannot be considered here.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).

As to the voir dire issue, Shabazz appears to argue that, because he had a Muslim name, juror prejudice was likely, and his counsel should have explored that issue on voir dire.  (Doc. 21, at 41-44.)  While Shabazz contends that religious bias may be a proper topic for voir dire in  certain circumstances, doc. 21, at 43, he does not make a convincing argument that the facts of his case should have led counsel to raise the issue.  The state court concluded that "trial counsel was not ineffective in choosing not to inquire about the prospective jurors' feelings about members of the Muslim faith."  (Doc. 6, RX 16, at 12; Abdul, 2009 WL 147403, at *5.)

20

This court cannot find that the state court's application of Strickland to the facts of this case was objectively unreasonable.  The petition should not be granted on the second ground.

## V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Shabazz raises two claims which allege ineffective assistance of appellate counsel.  The first ground of the petition is that appellate counsel was ineffective for failing to raise the issue that the trial court deprived Shabazz of his Sixth Amendment right to counsel, by failing to make an adequate and timely inquiry into his complaints about trial counsel.  (Doc. 1, § 12.)

The fourth ground of the petition is that appellate counsel was ineffective for failing to raise trial counsel's deficient performance "in which key evidence was withheld from Petitioner Shabazz during pre-trials and trial, and for not subpoenaing key witnesses for the Petitioner which would [have] change[d] the outcome of the case." (Doc. 1, § 12.)

A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial.  Evitts v. Lucey, 469 U.S. 387 (1985).  Ordinarily, to establish deficient performance, the petitioner must demonstrate that  appellate counsel made an objectively unreasonable decision by choosing to raise other issues, rather than a particular argument that "was clearly stronger than issues that counsel did present." Webb v. Mitchell, 586 F.3d 383, 399 (6th Cir. 2009), cert. denied, 130 S.Ct. 2110 (2010) (quoting Smith v. Robbins, 528 U.S. 259,

285, 288 (2000)).  Appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.  Willis v. Smith, 351 F.3d 741, 745 (6th Cir. 2003).

Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open the appeal before the Ohio Court of Appeals.  Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Shabazz filed an application to reopen his appeal under Ohio App. Rule 26(B).  (Doc. 6, RX 27.)

The court of appeals set forth the standard of review under Strickland v. Washington, and ruled on his claims as follows:

> Abdul first claims that his trial counsel were ineffective because they did not subpoena and present various witnesses.  This argument is unpersuasive because Abdul does not establish prejudice.  He does not establish with references to the record who these witnesses are and, more importantly, how their testimony would have exonerated him.  Without that, this court can only speculate, and speculation does not establish prejudice.  State v. Spencer (June 17, 1996), Cuyahoga App. No. 69490, reopening disallowed 2003-Ohio-5064 and State v. Thompson, Cuyahoga App. No. 79334, 2002-Ohio-5957, reopening disallowed 2003-Ohio-79334.  Abdul has attached to his supplemental brief the first page of an investigator's report concerning Randolph Thomas, who was in the building when the incident occurred.  According to the report, Thomas stated: "The next day I heard [Abdul] and the [victim] were playing with the pistol and it went off."  Such testimony is based on hearsay and is inadmissible.
>
> Abdul complains that his counsel did not share discovery with him.  He seems particularly aggrieved because the witness statements were not provided to him.  However, under Crim.R. 16, as it existed at the time of trial, the witness statements were not provided to the defense before trial.  Rather, subsection (B)(1)(g) provided for the in camera inspection of the witness statement after the witness's direct examination.  The record establishes this was often effectively done for the defense.  Moreover, the record does not establish what discovery

was or was not shared with Abdul, only that he expressed his dissatisfaction approximately two months before trial.

Abdul also complains that his defense counsel did not impeach one of the State's chief witnesses, William Green, with his extensive criminal record.  Instead, defense counsel impeached Green with multiple inconsistencies between his trial testimony and the statement he gave to the police.  Defense counsel also showed that Green had a bias, that he wanted justice for his friend, the victim.  Given the supreme court's admonitions concerning an attorney's strategy and tactics, it is understandable that appellate counsel, in the exercise of professional judgment, would not base an argument on the tactics of cross-examination.

Appellate counsel did argue that trial counsel was ineffective for failing "to inquire concerning prospective jurors bias toward members of the Muslim faith."  However, because Abdul's arguments were not well-founded, appellate counsel in the exercise of professional judgment properly decided not to include them in his assignment of error.

Abdul's second proposed assignment of error is that the trial court erred in not granting his motion to appoint new counsel.  Approximately two months before trial at a hearing to waive speedy trial rights, Abdul orally moved the trial court to change lawyers.  Abdul said that he had a conflict of interest with one of his attorneys, because he thought that attorney did not have his "best interest at heart."  (Tr. 9.) When the judge asked Abdul to specify the lawyer's deficiencies, Abdul replied that his rights under Crim.R. 16 had been violated, that he had not seen any of the evidence, and that his witnesses had not been subpoenaed.  The judge noted that this attorney was "one of the most seasoned trial lawyers in this city," that he has tried many murder cases, and that Abdul was not "going to get a more competent and qualified counsel." (Tr. 9.) The trial judge also confirmed with the attorney that discovery was still ongoing and explained to Abdul that the discovery was not going to fall into his lap all at once.  The judge also assured Abdul that the attorney would "subpoena those witnesses he believes are in your best interest." (Tr. 10.) The judge then denied the request.

In order to obtain substitute counsel, a defendant must show good cause, such as a conflict of interest, a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to

effective assistance of counsel, or an irreconcilable conflict that would lead to an unjust result.  Disagreements between the attorney and the defendant over strategy and tactics do not warrant a substitution of counsel.  Moreover, the trial judge should conduct a hearing on the motion.  The judge's decision is reviewed under an abuse of discretion standard.  State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48; State v. Jones, 91 Ohio St.3d 335, 2001-Ohio-57, 744 N.E.2d 1163; and State v. Blankenship (1995), 102 Ohio App.3d 534, 657 N.E.2d 559.

In the instant case, the trial judge conducted a hearing on Abdul's motion for new counsel.  Abdul expressed dissatisfaction but did not show a complete breakdown between himself and counsel.  The trial judge noted counsel's experience and competence and how Abdul's complaints were not ripe.  It is understandable why appellate counsel in the exercise of professional judgment would decline to argue an abuse of discretion regarding this issue.

(Doc. 6, RX 30, at 4-7; Abdul, 2009 WL 4406075, at *2-*3.)

The respondent contends that the state court's resolution of the ineffective assistance of appellate counsel claims was not an unreasonable application of Strickland to the facts presented in this case.  (Doc. 16, at 17-31, 38-44.)

In his traverse, Shabazz, for the most part, repeats the arguments that he presented to the state court in his Rule 26(B) application.  See generally doc. 21, at 37-40 and 48-51.

As to the first ground of the petition, which was the second ground of his Rule 26(B) application, the appellate court found that the state trial court's resolution of his motion for new counsel would not have constituted an abuse of discretion, and therefore appellate counsel's decision not to raise this issue on direct appeal was within an objective standard of reasonableness.  Shabazz has failed to establish that the state court's ruling "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786-787; see also Montgomery v. Bobby, 654 F.3d 668, 676 (6th Cir. 2011) (en banc) (quoting Richter).

As to the fourth ground of the petition, which was included as part of his broader first ground in his Rule 26(B) application, the court ruled that his argument concerning trial counsel's ineffectiveness in not subpoenaing certain witnesses was unpersuasive because he failed to establish prejudice.  The court found that Shabazz did not "establish with references to the record who these witnesses are and, more importantly, how their testimony would have exonerated him."  (Doc. 6, RX 30, at 4; Abdul, 2009 WL 4406075, at *2.)  Again, Shabazz fails to establish that this ruling was an unreasonable application of Strickland.

This court cannot find that the state court's application of Strickland to the facts of this case was objectively unreasonable.  The petition should not be granted on the first or fourth grounds.


## VI.  SUMMARY

The petition for a writ of habeas corpus should be denied.  Shabazz has failed to demonstrate that the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

<u>RECOMMENDATION</u>

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:  __April 3, 2012____          __/s/ Kenneth S. McHargh_____
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).